UNION STREET RAILWAY COMPANY *et al.* v. HILIE STONE.

1. OBJECTION TO PETITION, *When Good—When not.* An objection to a petition that it does not state facts sufficient to constitute a cause of action is good only when there is a total failure to allege some matter which is essential to the relief sought, and is not good when the allegations are simply incomplete, indefinite, or statements of conclusions of law. (*Laithe v. McDonald,* 7 Kas. 262.)

2. DEFECT IN STREET—*Notice—Liability of City.* Where the defect or obstruction in a street of a city is patent or obvious, and has continued so long that notice may be reasonably inferred, or where the defect or obstruction is one which with reasonable or proper care should have been ascertained and remedied, the city is liable for the

injuries resulting from such defect or obstruction. (*Jansen v. City of Atchison*, 16 Kas. 358; *Kansas City v. Bradbury*, 45 id. 381.)

3. STREET RAILWAY — *Defective Construction — Allegation of Notice.* Where a petition alleges that the city, on the date of the injury complained of, and for a long time before that date, negligently and carelessly permitted a street railway company to construct and maintain its track on a street of the city in such a careless and negligent manner as to dangerously obstruct travel, and further alleges that the railway company constructed its track over and along the street of the city in such a careless and negligent manner that the same was, on the day of the injury, and for a long time before that day, a dangerous obstruction to travel on the street, *held*, that in the absence of any attack upon the petition by demurrer or motion, the allegations were sufficient to charge the city with notice or knowledge of the defect or obstruction in the street caused by the construction and maintenance of the track of the street railway.

4. ———— *Harmless Error.* Where evidence is admitted which is not materially prejudicial, the judgment will not be reversed therefor.

5. PERSONAL INJURIES — *Joint Liability.* Where a street railway company is under a contract with the city "to construct and keep its railway in such manner and condition as not to prevent the crossing of the streets by teams and wagons at any point with safety," and a person rightfully driving on the street or crossing the track of the railway exercises due care, and is injured by reason of the negligence of the railway company in the construction of its track, or in suffering it to become dangerous to travel, and the city permitted the railway to be so constructed as to be dangerous to travel, or had notice or knowledge that the railway was out of repair and dangerous to travel, both the railway company and the city are liable.

6. PROXIMATE CAUSE — *Liability of City.* According to the weight of authority, a city is liable where a horse takes fright without any negligence on the part of the driver at some object for which the municipality is not responsible, and gets beyond the control of his driver and runs away, and comes in contact with some obstruction or defect in the road or street which the city has been negligent in not removing or repairing, if the injuries would not have been sustained but for the obstruction or defect.

7. Two CAUSES, *Producing Injury — Rule.* The rule is, that where two causes combine to produce the injury, both in their nature proximate, the one being the defect or obstruction in the public street and the other some occurrence for which neither party is responsible, the city is liable, provided the injury would not have been sustained but for the defect in the street.

8. ORAL INSTRUCTIONS — *No Prejudicial Error.* At the conclusion of the evidence, and at the time when the court was about to give oral

instructions to the jury, counsel for the defendants requested the court to give the instructions in writing. This request was refused, upon the ground that a rule of the court required that, if either party desired the general instructions to be in writing, the request must be made at or before the time the jury was impaneled. The instructions as delivered orally were taken down and transcribed by the official stenographer and signed by the judge. They were then delivered to the counsel for defendants at the time they commenced their argument, and were also delivered to the jury. *Held*, The refusing to instruct in writing was not a prejudicial error.

9. NEW TRIAL, *Not Granted.* Where it appears from the evidence and the special findings of the jury that no material error was committed in giving and refusing instructions, although such instructions may be criticised, no new trial will be granted therefor.

10. CASES, *Followed.* The cases of *City of Wyandotte v. Agan,* 37 Kas. 528, and *Railroad Co. v. McGinnis,* 46 id. 109, followed.

*Error from Cowley District Court.*

ON the 19th of April, 1890, the plaintiff, Mrs. Hilie Stone, filed her petition against the city of Winfield and the Union Street Railway Company, as defendants, to recover $5,000 damages for personal injuries. The petition alleged that while she was driving along Ninth avenue in said city, on the 24th day of May 1888, she received the injuries complained of, by reason of the alleged negligent manner in which the street railway was constructed over and along Ninth avenue, and by which it was a dangerous obstruction to travel along the avenue; and that the city had carelessly and negligently permitted the street railway company to construct and maintain the track of its line on the street in such a careless and negligent manner as to dangerously obstruct travel. The petitioner was answered by both defendants separately, and the case was tried on the 24th day of September, 1890, resulting in a verdict for $650 in favor of the plaintiff and against both defendants. The jury also returned the following special findings:

"1. Is the place where the injuries are said to have been received by the plaintiff within the corporate limits of the city of Winfield? A. Yes.

"2. Was the injury received on the line of the street rail-

way company on a public street in the city of Winfield?
A. Yes.

"3. What was the date of the accident in question? A.
Twenty-fourth of May, 1888.

"4. Was the plaintiff's team frightened and running
away at the time of the occurrence of the accident? A.
Yes.

"5. If you answer the last question 'yes,' state what
caused the plaintiff's team to become frightened. A. Grat-
ing of the buggy wheel on the track of the street railway.

"6. What route or course was pursued by the team after
the same became frightened, if you find that to be the fact?
A. About west.

"7. Where did the accident occur with reference to the
Santa Fé railroad, and how far from it? A. About 100 feet
west."

"12. How much has the plaintiff expended for medical
treatment and medical attendance occasioned by her injuries?
A. Do n't know.

"13. How much do you allow the plaintiff for her bodily
and mental anguish and suffering, if anything? A. $200.

"14. How much do you allow the plaintiff for the bodily
injuries received? A. $400.

"15. How much, if anything, do you allow the plaintiff
for loss of time and labor? A. $50.

"16. Where did plaintiff cross the street railway the first
time, with reference to the track of the 'Frisco' road? A.
East of 'Frisco' railroad track."

"18. Could she not have gone straight west on the street
on the south side of the railway track? A. Yes.

"19. Was the front left wheel of the buggy dished or in-
jured on account of plaintiff crossing the street railway track
the first time? A. Yes."

"22. Was the plaintiff guilty of negligence in crossing
the street railway track either time? A. No.

"23. What caused the buggy to turn over? A. Obstruc-
tion of the street railway track in center of street."

"26. At the time of the accident, was there room on each
side of the street railway track for teams to pass east and
west on the street without coming in contact with the track
of the street railway? A. Yes.

"27. At the time of the injury, was the street on each side
of the street railway track, at the place where plaintiff was

driving, in a condition that a reasonably prudent person could have driven along in safety at the place where the accident occurred? A. Yes.

"28. Did the city in any way by its negligence contribute to the injury of the plaintiff? A. Yes.

"29. If you answer the last question in the affirmative, please state how. A. By the city officials of the city of Winfield not enforcing the city ordinances of the city of Winfield, Kas., compelling the Union Street Railway Company to comply with said ordinance in the construction of said street railway."

Judgment was entered in favor of plaintiff and against both defendants upon the verdict. The defendants bring the case here.

*Madden & Buckman,* for plaintiffs in error:

1. Applying the most liberal rules of construction and interpretation, the petition fails to state several very necessary and material facts in order to plead a cause of action against the city of Winfield, and must be held fatally defective. The court erred in not sustaining the objection of said city to the introduction of any evidence thereunder. See *City of Topeka v. Tuttle,* 5 Kas. 311; *Kansas City v. Bradbury,* 45 id. 381.

2. The court erred in admitting in evidence the opinion of witnesses as to the street car track at the point of the accident being a dangerous obstruction. See *Gabbey v. Forgeus,* 38 Kas. 62; *City of Topeka v. Sherwood,* 39 id. 690; *St. L. & S. F. Rly. Co. v. Ritz,* 33 id. 404; *Tefft v. Wilcox,* 6 id. 46; *Da Lee v. Blackburn,* 11 id. 190; Rice, Ev. 357, 358; *Crane v. Northfield,* 33 Vt. 124; *Brown v. Road Co.,* 89 Mo. 152; *Kelly v. Fond du Lac,* 31 Wis. 179; *City of Parsons v. Lindsay,* 26 Kas. 426; *Gilmer v. City of Atlanta,* 77 Ga. 688.

3. Over the objections of the defendants, the court permitted the plaintiff to read in evidence, from the ordinance book of the city, ordinance No. 258, granting the defendant railway company a franchise to lay its tracks in the streets.

4. The case ought to be reversed on account of the miscon-

duct of the court at the trial, which was very prejudicial to the rights of the defendants and absolutely out of place on the part of the court. In the interest of right, a reviewing court ought jealously and critically to examine and consider the remarks of the court below in the presence of the jury, and if, by implication or inference, influence would be the result of such remarks, then they should be held to vitiate the verdict, and warrant a reversal. See *Brunker v. Cammins,* 32 N. E. Rep. 732; *McIntosh v. McIntosh,* 44 N. W. Rep. (Mich.) 592; *Chicago City Railways v. McLaughlin,* 40 Ill. App. 496; *Graham v. McReynolds,* 90 Tenn. 673; *Darrow v. Pierce,* 51 N. W. Rep. (Mich.) 813.

5. At the conclusion of plaintiff's testimony, the defendants each filed a written demurrer to such testimony, and both were overruled by the court *pro forma* — refusing to hear arguments. That these demurrers should have been sustained by the court, seems almost a self-deducting conclusion.

It was held in *City of Wellington v. Gregson,* 31 Kas. 99, that, "While, generally speaking, it is the duty of a city to keep its streets in reasonably safe condition for public travel, it is not thereby implied that every street, and the whole width of every street, must be placed and kept in good condition."

See, also, *Osage City v. Brown,* 27 Kas. 74; *Corbett v. City of Leavenworth,* 27 id. 673; *Koonetski v. City of Detroit,* 94 Mich. 341, 53 N. W. Rep. 1106; *Hausman v. Madison,* 55 N. W. Rep. (Wis.) 167; *Wright v. City of St. Cloud,* 55 N. W. Rep. (Minn.) 819; *Flynn v. Neosho,* 21 S. W. Rep. (Mo.) 903; *Norwood v. City of Somerville,* 33 N. E. Rep. (Mass.) 1108.

It has been held that there is no liability if the negligent obstruction and a runaway team concur in producing the injury. *Moulton v. Sanford,* 51 Me. 127; *Perkins v. Fayette,* 68 Ind. 152; *Davis v. Dudley,* 4 Allen, 557; *Titus v. Northbridge,* 97 Mass. 258; *Brown v. Mayor,* 57 Mo. 156; *Dreher v. Fitchburg,* 22 Wis. 643; *Houfe v. Fulton,* 29 id. 296; *Olson v. Chippewa,* 71 id. 558.

6. The court erred in refusing to charge the jury in writing and separately state and number the paragraphs of the charge.

See *City of Atchison v. Jansen,* 21 Kas. 560; *Patterson v. Ball,* 19 Wis. 259; *Rich v. Lappin,* 43 Kas. 667; *The State v. Stoffel,* 48 id. 364; *The State v. Bennington,* 44 id. 583, and cases cited; *Brown v. Crawford,* 29 Pac. Rep. (Colo.) 1137; *Jenkins v. Wilmington &c. Rly. Co.,* 110 N. C. 438.

7. The court erred in instructing the jury on the question of contributory negligence.

See *A. T. & S. Rld. Co. v. Morgan,* 31 Kas. 77; *Railway Co. v. Peavey,* 29 id. 169; *Railway Co. v. Young,* 19 id. 488; *Railway Co. v. Pointer,* 14 id. 37; *Sawyer v. Sauer,* 10 id. 466.

See, also, *Mongehella v. Fisher,* 111 Pa. St. 9; same case, 13 Am. & Eng. Corp. Cas. 431; *Strong v. Placerville Rld. Co.,* 61 Cal. 321; *Otis v. Janesville,* 47 Wis. 422; *Cremer v. Portland,* 36 id. 92; *Mattimore v. City of Erie,* 144 Pa. St. 14; *Supply Co. v. Bundy,* 122 id. 449; *McAnich v. Railway Co.,* 20 id. 338.

8. The court erred in instructing the jury upon the measure of the duty of the defendants. See 2 Dill. Mun. Corp., § 721; *Street Rly. Co. v. De Laster,* 84 Tex. 82; *Smith v. City of Pella,* 53 N. W. Rep. (Iowa) 226; *McNeoney v. Reading,* 150 Pa. St. 611, 25 Atl. Rep. 57; Elliott, Roads & St., pp. 586, 587; *Hays v. Gainesville etc. Rly. Co.,* 70 Tex. 602; *City Rly. Co. v. Nolan,* 53 Tex. 139; *McKillop v. Street Rly. Co.,* 55 N. W. Rep. 739; *Union Rly. Co. v. Alexander,* 93 Ala. 133, 9 S. Rep. 527; *Fitts v. Cream City Rld. Co.,* 59 Wis. 328.

9. The court erred in instructing the jury as to the measure of damages in case they should find for the plaintiff below. The basis of the claim in the petition is the fact that she was unable to attend to her business and work. Being a married woman, under the rule laid down by this court in the case of *A. T. & S. F. Rld. Co. v. McGinnis,* 46 Kas. 109, such a claim for damages is untenable, so far as she is concerned;

and, under the petition, and without the petition being amended, the instructions were absolutely erroneous, and gave the jury a false idea of what they were to consider and estimate in arriving at a verdict.

The instruction with reference to mental anguish was erroneous and the finding shows that the jury took that into consideration, and presumably they must have followed the charge of the court. See *Masters v. Warren*, 27 Conn. 293; *Railroad Co. v. Sum*, 73 Ga. 712; *Railroad Co. v. Randall*, 85 id. 297; *Chicago v. McLean*, 133 Ill. 148; *Frees v. Tripp*, 70 id. 496; *Ferguson v. Davis Co.*, 57 Iowa, 601; *City of Salina v. Trosper*, 27 Kas. 544; *Black v. Railroad Co.*, 10 La. 32; *Mith v. Grant*, 56 Me. 255; *Davidson v. Nichols*, 11 Allen, 514; *Clinton v. Laning*, 61 Mich. 355, and numerous others.

10, 11. The court erred in refusing to give certain special instructions requested by the defendants.

12. Of the special questions asked by the defendants to be submitted to the jury, the court refused to give those numbered 8, 9, 10, 11, 17, 20, 21, 24, and 25. This we claim as another ground of error.

See *Jones v. Annis*, 47 Kas. 478; *Bent v. Philbrick*, 16 id. 190; *C. I. & K. Rld. Co. v. Townsdin*, 38 id. 82; *Clark v. Weir*, 37 id. 102; *Elliott v. Reynolds*, 38 id. 274; *W. & W. Rld. Co. v. Fechheimer*, 36 id. 46; *City of Wyandotte v. Gibson*, 25 id. 243; *A. T. & S. F. Rld. Co. v. Plunkett*, 25 id. 198; *Morrow v. Comm'rs of Saline Co.*, 21 id. 484.

13. The court erred in overruling the motion for judgment on the special findings and the motion for a new trial. It is true that the jury, in response to some of the special questions, said that she was not negligent in crossing the track in the first instance, but their answers to other questions seems to conflict, and show that she evidently must have been negligent in driving across this track. In fact, after her own testimony, the court should have found, as a matter of law, that she was guilty of contributory negligence to such an extent that she could not recover.

*McDermott & Johnson*, for defendant in error:

1. All the city did was to permit this obstruction to be maintained, and that was sufficient to render it liable. *Kansas City v. Bradbury*, 45 Kas. 381.

It is further alleged, that the petition does not negative contributory negligence. But we hardly think that it will be argued that the plaintiff must allege or prove that she was not guilty of contributory negligence. Contributory negligence is matter of defense, and want of it need not be alleged or proved in the first instance. *U. P. Rly. Co. v. Hand*, 7 Kas. 388. While the court did not decide this point in the above case, it expressed an opinion, and afterward decided the point in accordance with that opinion. *K. P. Rly. Co. v. Pointer*, 14 Kas. 51.

The court will observe that no demurrer was filed to the petition, nor was any motion made to have the petition made more definite or certain. The first and only objection to the petition was this objection to the introduction of evidence. This objection was made too late. If the objection was tenable at all, it should have been taken by demurrer.

See *Fitzpatrick v. Gebhart*, 7 Kas. 41; *Crowther v. Elliott*, 7 id. 235; *Bailey v. Dodge*, 28 id. 72; *McPherson v. Kingsbaker*; 22 id. 646; *Railroad Co. v. Fox*, 31 id. 599; *Laithe v. McDonald*, 7 id. 261; *Polster v. Rucker*, 16 id. 115; *The State v. School District*, 34 id. 241; *Barkley v. The State*, 15 id. 99, 107; *Mitchell v. Milhoan*, 11 id. 617, 625, 626, and cases there cited.

2. The evidence of W. A. Freeman and M. B. Rhodes, as cited by counsel, was neither incompetent, irrelevant, nor immaterial, nor was it the mere opinion of the witnesses. The condition of the street as to whether it was dangerous or not was a fact patent to everyone who had eyes to see; but, if it were expert testimony, the witnesses had made themselves competent. In addition to these two witnesses, a half dozen other witnesses testified to such a condition of the street as to show that it was impassable and dangerous to attempt to cross

the street at the point where the accident occurred. In the light of the testimony of these witnesses, the admission of the statements complained of was not error, and if it was error, such error would be immaterial. *Railway Co. v. Paul*, 28 Kas. 816; *City of Topeka v. Sherwood*, 39 id. 690.

3. The third objection urged by plaintiffs in error is immaterial, because the sections which so appear to be amended were not material to the issues of the case.

4. We perceive no error in the refusal of the trial court to indulge counsel for plaintiffs in error for a few minutes. It is a matter wholly within the discretion of the court whether it will stop the proceedings of the court or not, at the request of attorneys, especially when, as in this case, no reason is given for the request, and the court is not informed of the purpose for which counsel wanted to be indulged. Counsel could not as a right demand of the court that the trial be stopped to suit their convenience, and if they could not demand it as a right then the court did not err in refusing the request.

5. Counsel claim that the demurrer to the evidence should have been sustained, and in that connection say that the demurrer was overruled *pro forma*, the court refusing to hear arguments. This statement is not borne out by the record, and must be erroneous. If there is evidence sufficient to sustain the allegations of the petition, then the demurrer was properly overruled.

Counsel argue that the plaintiff was guilty of contributory negligence because she crossed the street in the first instance; that there was no necessity for crossing the track, or to go from one side of the street to the other; if she had continued on the same side the team would not have been frightened or run away. She had a right to cross the street anywhere. The street was one of the principal streets of the city, and it was the duty of the city to keep it in a reasonably safe condition for both pedestrians and teams. *City of Olathe v. Mizee*, 48 Kas. 438.

Counsel say that the proximate cause was the running away

of the team and coming in contact with the track at the place where it was permitted to protrude. This is true. This concession by counsel is sufficient to justify the verdict for the plaintiff below, and the court committed no error in overruling the demurrer. *City of Olathe v. Mizee,* 48 Kas. 438; *City of Topeka v. Tuttle,* 5 id. 322.

6. The objection that the court erred in refusing to give its instructions in writing is not a good one. This case comes clearly within the rule laid down by this court in *A. T. & S. F. Rld. Co. v. Franklin,* 23 Kas. 74. The request was not made in time. The instructions were written out and furnished to counsel before they began their argument to the jury, and were furnished to the jury on retiring, so that counsel have no reason to complain.

7. The seventh, eighth and ninth assignments of error all refer to the instructions given to the jury, and may all be answered under one head. Counsel first complain of omissions in charge of the court; that the court ought to have told the jury what was meant by contributory negligence, etc. They cannot complain of this, as they did not ask the court to give any further instructions on that point. *Douglass v. Geiler,* 32 Kas. 499.

See, also, *K. P. Rly. Co. v. Nichols,* 9 Kas. 235; *Stith v. Fullinwider,* 40 id. 73, 76.

We submit further, that if proper exceptions had been taken and the instructions could be reviewed, and even if the instructions were in part erroneous, still plaintiffs in error could not complain unless it should further appear that such error was prejudicial. Instructions which the special findings show could not have prejudiced the defendant are not cause for reversal even though erroneous. *Luke v. Johnnycake,* 9 Kas. 511; *Woodman v. Davis,* 32 id. 344; *Tallman v. Jones,* 13 id. 438.

In their special findings, the jury do not allow anything for either of the purposes which counsel claim was improper, except the one item of $50 for loss of time and labor, and we are willing to concede that this was improperly allowed to

her, under the rule laid down in the case of *A. T. & S. F. Rld. Co. v. McGinnis*, 46 Kas. 109. The other two items are clearly right, under the rule laid down in the last case cited.

There is no claim made by the plaintiff for mental anguish apart from bodily suffering, and no evidence offered to prove mental anguish except as it grew out of and was connected with bodily suffering; and the defendants, in submitting their special questions, and the jury, in answering said questions, considered and treated them as being so connected and dependent on each other. The defendants, in their question, used the words "bodily and mental anguish"; that is to say, one anguish, partaking of the nature of both physical and mental suffering, and the jury treats them as one. *City of Salina v. Trosper*, 27 Kas. 562.

8. In the tenth and eleventh assignments of error, counsel complain of the refusal of the court to give certain instructions asked by them; but as counsel failed to except to such refusal, they cannot avail themselves of any error in the refusal.

There is no record of any exceptions, except a statement as follows: "The following special instructions, asked by the defendants, were refused by the court, the defendants at the time excepting." Then follow the six instructions refused. So broad an exception did not call the attention of the court to any particular paragraph, and is not such an exception as will demand attention. *City of Atchison v. King*, 9 Kas. 550; *Sumner v. Blair*, 9 id. 521.

9. The defendants requested the court to submit to the jury 29 different questions. Twenty of them were submitted and nine refused. The only exception to the refusal is in the following words: "The following special questions asked by defendants to be submitted to the jury were refused by the court, the defendants at the time excepting." The exception was to the refusal to submit the nine questions as a whole, and if any one of them was properly refused, the exception will be unavailable to the defendants. Some of these questions were immaterial, and some improper, and others were

not pertinent to the issues, nor based on any act proved. But even if they were material, the refusal to give them is not reversible error, when the general verdict is sustained by the facts, which the jury did find. *City of Wyandotte v. Gibson,* 25 Kas. 245.

Counsel seem to think, and that is the only thing they allege is negligence upon the part of the plaintiff, that she had no business crossing the street because she could have driven along the side she was on, and that such crossing was negligence on her part. But it is not negligence to cross the street even if she had no reason for doing so, even if her desire was a mere whim. We concede, of course, that if the danger was known or apparent, she would not be justified in running into it carelessly; but even if she knew of the danger, that knowledge itself would not be negligence. *Osage City v. Brown,* 27 Kas. 74.

The verdict of the jury on the question of negligence is conclusive. *City of Salina v. Trosper,* 27 Kas. 562.

After carefully examining all the objections urged by plaintiffs in error, we are unable to see any reason why the judgment should be reversed, except the allowance of $50 for loss of time and labor, and to that extent the judgment should be modified.

The opinion of the court was delivered by

HORTON, C. J.: Upon the trial, the railway company and the city of Winfield objected to the introduction of any evidence under the petition, upon the ground that it failed to state a cause of action against the defendants, or either of them. No demurrer was filed to the petition, nor was any motion presented to have it made more definite or certain. In the absence of a demurrer and motion, the allegations of a petition will be construed liberally, and, unless

1. Objection to petition, when good—when not.

there is a total omission to allege some material fact which is essential, a petition will he held good. If the facts are all stated, even indefinitely or in form of conclusions, a petition will be regarded

as sufficient. (*Laithe v. McDonald*, 7 Kas. 261 ; *Fitzpatrick v. Gebhart*, 7 id. 41 ; *Crowther v. Elliott*, 7 id. 235; *The State v. School District*, 34 id. 241.)

It is argued that no notice to the city of Winfield is pleaded. The petition alleges:

"That prior to the 24th day of May, 1888, the railway company had constructed the track of its line of street railway over and along West Ninth avenue in the city of Winfield in such a careless and negligent manner that the same was, on the 24th day of May, 1888, and for a long time before and after that day, a dangerous obstruction to travel along the street; and that the city of Winfield, on the 24th day of May, 1888, and for a long time before and after that day, negligently and carelessly permitted the railway company to construct and maintain the track of its line of street railway on West Ninth avenue in such a careless and negligent manner as to dangerously obstruct travel on the street."

Where the defect or obstruction in a street of a city is patent or obvious, and has continued so long that notice may be reasonably inferred, or where the defect or obstruction is one which, with reasonable or proper care, should have been ascertained and remedied, the city is liable for the injuries resulting from such defect or obstruction. (*Jansen v. City of Atchison*, 16 Kas. 358; *Kansas City v. Bradbury*, 45 id. 381.

2. Defect in street—notice—liability of city.

3. Allegation of notice.

It is insisted that the court erred in admitting in evidence the opinion of witnesses as to the street car track, at the point of the accident, being dangerous, and ordinance No. 258 of the city of Winfield granting the railway its franchise to lay its tracks in the streets. Under the authority of *City of Topeka v. Sherwood*, 39 Kas. 690, the opinion evidence was not materially prejudicial. While certain sections of ordinance No. 258 have been amended by ordinance No. 300, yet section 3, providing the manner in which the tracks should be laid and maintained by the railroad company, has not been amended or repealed. The sections amended were not in full force, and, if objection had

4. Harmless error.

been taken to these sections, the trial court would undoubtedly have rejected them. But the objection was to all the ordinance as incompetent, irrelevant, and immaterial, and was therefore properly overruled. Sections 1, 2 and 3 were material and pertinent to the issues.

At the conclusion of the evidence of plaintiff below the defendants filed separate demurrers. These were overruled. It is now insisted that the trial court should have sustained these demurrers. The track of the railway company is located near the center of the street, running east and west. There is room for teams and vehicles to pass and repass on each side of the track. At Bridge street the tracks of two railroads, the "Frisco" and Santa Fé, cross the street. East of the railroads the top of the track of the street railway is slightly elevated above the level of the street, sufficient to catch the wheels of vehicles when attempting to cross at almost any angle; and west of the railroad crossings the grade of the street descends, and the street railway track is elevated above the level of the street the full extent of the rails, about four inches; and on the north side of the track the ends of the cross ties are exposed, making it almost impossible to cross the track with vehicles. While driving along the street, east of the railroad crossing, and while crossing the street car track with her team and carriage, with one seat occupied by Mrs. Stone and two other women and a child, the wheel caught in the track and made a rasping or grating noise, which scared the horses, and they started to run. After crossing the railroad tracks, the horses being turned toward the track again, the wheel struck the protruding cross ties and track, upsetting the carriage and throwing the occupants, including Mrs. Stone, out, causing the injuries complained of. Mrs. Stone testified that in going out of town she always crossed the track from the south side to the north before reaching the railroad tracks, because it was the best road. Where she was thrown out of the carriage the rails and ties of the street railway were above the level of the street, and a dangerous obstruction for teams with vehicles.

7—54 KAS.

It is urged that there is no liability on the part of the railway company or the city of Winfield for the negligent defect or obstruction of the street, as the runaway team concurred in producing the injuries of Mrs. Stone.    This is the rule in Massachusetts, Maine, Wisconsin, and West Virginia; but the contrary is held by the courts of New York, Pennsylvania, Georgia, Missouri, Indiana, Connecticut, New Hampshire, Vermont, and Texas. (Beach, Contrib. Neg., § 245.)    Elliott, in his recent work upon Roads and Streets, says:

"According to the weight of authority, the city is liable where a horse takes fright without any negligence on the part of the driver at some object for which the municipality is not responsible, and gets beyond the control of his driver, and runs away and comes in contact with some obstruction or defect in the road or street which the city has been negligent in not removing or repairing, if the injuries would not have been sustained but for the obstruction or defect." Pages 448, 449, and cases cited. (*Sherwood v. City of Hamilton*, 37 U. C. Q. B. 410; *City of Joliet v. Shufelt*, 32 N. E. Rep. [Ill.] 969.)

6. Proximate
   cause—liability of city.

7. Two causes,
   producing injury—rule.

We prefer to follow the general weight of authority, and therefore cannot adopt the rule that cities are not liable for injuries to a runaway horse or his owner occasioned by an obstruction or defect in the streets.    It is suggested that the city was not required to keep the whole width of Ninth avenue in good condition, and *City of Wellington v. Gregson*, 31 Kas. 99, is referred to.    In that case it was observed : " Whether in any given case a city can be charged with negligence in failing to improve and render safe for use the entire width of the street, and also whether, when it has put a portion in good condition, it can be charged with negligence on account of posts, stakes, or other obstructions outside of the traveled track, are ordinarily questions of fact for the determination of a jury;" but the city of Winfield had opened for public travel all of Ninth avenue, and the street railway in its contract with the city was required to construct its railway

"in such manner and condition as not to prevent the crossing of the streets or avenues by teams and wagons at any point with safety." Ninth avenue was one of the principal streets of the city, and had been opened. It was the duty of the city to keep it in a reasonably safe condition for both pedestrians and teams. (*City of Olathe v. Mizee*, 48 Kas. 438.) Whether Mrs. Stone was guilty of contributory negligence in crossing the street railway where and in the manner she did, and whether she was guilty of any negligence connected with the driving of the team or their running away, were questions for the jury not for the court.

5. Personal injuries—joint liability.

It is further insisted that the court erred in refusing to charge the jury in writing. At the conclusion of the evidence, the railway company and the city of Winfield asked the court to give the instructions in writing and separately number them. This request was refused, upon the ground that it was made too late. It appears from the record that it was a rule of the district court of Cowley county that, if either party desired the general instructions to be in writing, the request must be made at or before the time the jury was impaneled, and if the request was not then made, it would not be considered. It appears in this case that the instructions as delivered were taken down by the official stenographer, and by him transcribed, and signed by the judge and delivered to counsel for defendants at the time they commenced their argument, and were also sent out to the jury. It is of great advantage if the request for instructions in writing is made at the commencement of the trial, so that, as the trial progresses, the judge can draw up those portions of his instructions which are applicable to the evidence as successively presented. (Thomp. Char. Jury, § 112, p. 153.) At the time of the decision in *Railroad Co. v. Franklin*, 23 Kas. 74, the instructions were given when the argument of the case was concluded. This court held that if the request for written instructions was not made until after the argument, the

request was too late and not available. VALENTINE, J., speaking for the court, remarked:

."If counsel may wait until the close of the argument before making the request, it would necessarily cause great delay in the proceedings of the court, and materially increase costs and expenses. Generally, it would require an adjournment of the court to enable the judge to prepare his written instructions." The order of trial was changed by chapter 126, Laws of 1881, so that the general instructions to the jury are now given when the evidence is concluded. (Civil Code, § 275.) Therefore, if counsel may wait until the close of the evidence before making the request, it will generally require an adjournment of the court to enable the judge to prepare instructions; but in this case, whatever view may be taken as to the time it is necessary to make the request, the court committed no prejudicial error, because both the counsel for the defendants below and the jury were furnished with the instructions in writing in ample time for any beneficial purpose. If either party desires special instructions to be given to the jury, such instructions may be reduced to writing and delivered to the court when the evidence is concluded. This is expressly permitted by the statute. (Civil Code, § 275.)

8. Oral instructions—no prejudicial error.

It is further insisted that the trial court committed error in refusing and giving instructions. With a single exception, although the instructions may be criticised, yet on account of the findings of the jury and the evidence in the case, we do not think the jury were misled thereby, or that there was anything prejudicial in those given or refused. (*Street Rly. Co. v. Nolan,* 53 Tex. 148; *Street Rly. Co. v. Delesdernier,* 84 id. 82.) The exception we refer to is the instruction concerning the measure of the damages permitting a recovery for lost time and medical attention. Mrs. Stone was a married woman, living with and keeping house for her husband. She was not engaged in any other business. Under the decisions of this court, her serv-

9. New trial, not granted.

ices as a wife were due to her husband. He was also bound to furnish her with medical attention. (*City of Wyandotte v. Agan*, 37 Kas. 528; *Railroad Co. v. McGinnis*, 46 id. 109.) The jury, however, allowed nothing for medical attention, and specially found that there was included in the verdict $50 only for loss of time and incapacity to labor. This amount must be deducted from the judgment. The jury allowed in their verdict $400 for actual injuries received by Mrs. Stone, and $200 for bodily and mental suffering, as an element of the physical pain, or as the necessary consequence thereof. The mental was connected with the bodily suffering. This is admissible. (*City of Salina v. Trosper*, 27 Kas. 544.)

The judgment will be modified by deducting $50 for lost time and incapacity to labor, but affirmed otherwise. The costs in this court will be divided.

All the Justices concurring.

*10. Cases, followed.*