THE CITY OF CLAY CENTRE v. B. F. JEVONS.

No. 69.

1. DEFECTIVE STREET—*Liability of City—Instruction.* Where, in an action to recover damages for personal injuries sustained by the plaintiff through the alleged negligence of a city, in failing to place a guard or railing along a deep excavation adjoining the outer edge of a sidewalk at the intersection of street crossings, to prevent persons from falling into such excavation, the jury are permitted to view the premises, it is not error for the court to instruct the jury that they are to determine from all the evidence and from the view of the premises whether the city was guilty of the negligence charged.

2. ——— *Immaterial Error.* Although the court erred in refusing to charge the jury as requested that, under a given state of facts, ordinary care on the part of the plaintiff would require the exercise of a higher degree of caution than would otherwise be expected of him, such error becomes immaterial when, from the special findings of fact, it appears that the plaintiff did exercise greater caution by reason of the existence of such facts than a person would naturally have used had the facts not been as suggested in such instruction.

3. NEGLIGENCE—*Remote and Proximate Cause.* Where the plaintiff was not guilty of contributory negligence, and the injury complained of would not have resulted but for the negligence of the defendant, a recovery may be had, notwithstanding the primary cause of the injury may have been an accident for which the defendant was not responsible.

MEMORANDUM.— Error from Clay district court; R. B. SPILMAN, judge. Action by B. F. Jevons against the City of Clay Centre to recover damages for bodily injuries. Judgment for plaintiff. The defendant city brings the case to this court. Affirmed. The opinion herein, filed April 3, 1896, states the material facts.

*F. P. Harkness,* city attorney, for plaintiff in error.
*F. B. Dawes,* for defendant in error.

The opinion of the court was delivered by

CLARK, J.: This is an action brought by B. F. Jevons to recover damages for personal injuries sus-

tained by him by falling into a ditch or excavation adjacent to one of the principal streets of Clay Centre. The petition alleged that on the 2d day of August, 1890, and for a period of more than a year prior thereto, there was

"a deep and dangerous excavation or ditch at and near the southwest corner of block 43 of said city, and along the outer edge of the sidewalk on the east side of Fifth street, and at and near the point where Grant avenue crosses Fifth street, which ditch, for at least 30 feet from said corner of said block northward, is and was of the average depth of more than three feet, and at the outer angle formed by the approach of the crossings of Fifth street and Grant avenue is and was of the depth of over four feet, and thus, at said point, forming a deep and dangerous excavation, so that it was and is dangerous for persons on foot to pass along said street at said point; that said deep and dangerous excavation was wilfully, carelessly and knowingly made by said city, and was, for a long time prior to said 2d day of August, 1890, wilfully, knowingly and negligently permitted, allowed and suffered to remain without any guard, fence or handrail around or along the same, to prevent foot passengers from falling into the same."

The petition further alleged that on the 2d day of August, 1890, at the hour of 9 o'clock P. M., the plaintiff fell into said excavation or ditch at the intersection of said crossings and received severe injuries, for which he claimed damages in the sum of $2,000. A demurrer to the petition being overruled, the defendant answered by a general denial, and alleged contributory negligence.    Trial was had before a jury, which were allowed by the court to be conducted to the place where the accident occurred, in charge of a sworn bailiff, under instructions that they should make the examination without conversing among themselves or any one about the place.    A general verdict was

returned in favor of the plaintiff for $275, and in addition thereto special findings of fact were made, including the following :

At the request of the plaintiff —

"1. Was the city guilty of ordinary negligence in not extending the plank approach leading to the sidewalk at the place of the accident further south, so as to cover the ditch to the full width of the sidewalk on the south side of the block at that point? Ans. Yes.

"2. Was the city guilty of ordinary negligence in not covering and keeping covered the ditch at the point where the accident occurred? A. Yes."

At the request of the defendant —

"1. Did the plaintiff, at and prior to the time of said accident, know the condition of the crossing, approach and gutter at the place where the accident occurred? Ans. No.

"2. How long prior to the 2d day of August, 1890, had the opening in the gutter or excavation complained of existed? A. Four or five years.

"3. Had not the plaintiff repeatedly passed along the sidewalk adjacent to said gutter or drain previous to the accident? A. Yes, several times.

"4. Did he not pass by the same the evening of the accident and prior thereto, when the same was well lighted? A. Yes.

"5. For what purpose was said drain so constructed? A. To carry off surface-water."

"7. Did the city exercise ordinary care in the construction and maintenance of the gutter at the intersection of Fifth street and Grant avenue, taking into consideration the purpose for which it was constructed, the grade of Fifth street at that time, and all the surrounding circumstances connected therewith? A. No.

"8. Was it the duty of the defendant city, in the exercise of ordinary care and precaution in regard to its streets, to place guards or a railing along said ditch or excavation to prevent persons from falling into the same? A. Yes, or cover it up.

"9. How wide was the plank approach from the crossing on Fifth street, extending over and across said gutter to the sidewalk on the east side of said street?    A. Five feet 11½ inches.

"10. Was or was not such approach of sufficient width for the accommodation of foot passengers crossing such drain at that point?   A. Yes."

"16. Was not the gutter or drain at and along the place where such accident occurred on a regular grade with the same both above and below said point?   A. Yes.

"17. Was said drain at the point in question any deeper than was ordinarily required, taking into consideration the grade of Fifth street, the extent of territory necessarily drained thereby, and the outlet thereof?   A. No."

"19. If the electric lights had not been extinguished immediately before plaintiff attempted to cross said Fifth street and the drain on the east side thereof, could he not, with the exercise of ordinary care, have crossed safely and avoided falling into said drain?   A. Yes.

"20. Did the plaintiff, in crossing said street, exercise ordinary care, taking into consideration what knowledge he had of the location of such cross-walk, approach, and drain, the sudden extinguishment of the street lights, and all the circumstances surrounding him at the time?   A. Yes.

"21. Did he, by reason of the darkness and other surrounding circumstances mentioned in the previous question, use any greater caution than a person would naturally have used if it had been light?   And, if you say 'Yes,' in what particular?   A. Yes; by walking slowly and aiming to reach the center of the sidewalk on Grant avenue.

"22. If you find that the injury of the plaintiff was the result of defendant's negligence, in what did such negligence consist?   A. In not guarding or covering the ditch."

"29. How long previous to the accident complained of did the street lights go out that night, and how long

did they remain out?  A. A moment before, and remained out from 10 to 30 minutes.

"30.  Could the going out of said lights at that time have been avoided by the exercise of ordinary care on the part of the defendant city?  A. No."

"32.  Did the city have notice of the going out of said lights in time to have had them lighted before the accident complained of occurred?  A. No."

The court overruled the defendant's motion for judgment in its favor on the special findings of the jury, and for a new trial, and rendered judgment in favor of the plaintiff on the general verdict.   Exceptions to the various rulings of the court were duly saved, and some of these rulings are assigned for error in this court.   The alleged errors chiefly relied on are the giving and refusing of instructions to the jury, and the overruling of the motions for judgment on the special findings of fact and for a new trial.

In one of the instructions given by the court the following language is used :

"Now, it is for you to say from all the evidence and from a view of the premises, under the general rules of law elsewhere given in these instructions, whether said street was dangerous and unsafe for travel by footmen at this point, and whether the city was guilty of negligence in allowing it to remain in the condition it was at the time the alleged injury was received ; and in so doing you may take into consideration the depth and character of the ditch or excavation, the purpose for which it was allowed by the city to remain there, if it served any useful purpose, whether it was in a remote or unfrequented part of the city, or near the center or business part, whether it was obligatory upon the city, in the exercise of care and precaution in regard to its streets which the law requires of it, to have placed guards or railing along said ditch or excavation to prevent persons from falling into the same."

The city claims that

"This instruction places the view of the jury on an equality with the other evidence of the case, or, in other words, allows the jury to raise the knowledge and information obtained by the view to the dignity of preponderating or exclusive evidence."

We do not think the language employed by the court would warrant such a construction, and are of the opinion that the court fairly indicated to the jury that the proper object of the view was to enable them better to understand the evidence offered in court.

Whether the court erred in refusing the second instruction requested by plaintiff in error is immaterial, as the jury find, in answer to the interrogatories numbered 20 and 21, that the plaintiff used greater caution than a person would naturally have used had it not been for the sudden extinguishment of the street lights. The substance of the third instruction requested to be given was covered by the general charge, and there was no evidence upon which to base the fourth instruction requested. Nor was there any error prejudicial to the city in giving that portion of instruction No. 8 which reads:

"If you further believe from the evidence that the injury sustained by the plaintiff was solely the result of the darkness caused by such accidental going out of the lights of said street, and also believe that the defendant was not guilty of negligence as explained in the fourth and fifth instructions, then you should find for the defendant."

The evidence is uncontradicted that the plaintiff sustained the injuries complained of by falling into this excavation, nor is there any dispute as to the condition of the street at the place where the accident occurred. The right to recover damages is based upon the alleged negligence of the defendant in failing to

erect a guard, fence or railing along the sides of the excavation at that particular point. If the city was not negligent in this respect no recovery could be had. If, on the other hand, it was the duty of the city to have erected and maintained a guard, fence or railing at that point for the protection of pedestrians, and the injury complained of would not have been sustained but for such negligence, and the plaintiff was not guilty of contributory negligence, he would be entitled to recover, notwithstanding the primary cause of the injury was the sudden going out of the lights. (*Palmer v. Andover*, 2 Cush. 600 ; *Hoffe v. Town of Fulton*, 9 Am. Rep. 568 ; *City of Joliet v. Verley*, 85 Am. Dec. 342 ; *Street Rly. Co. v. Stone*, 54 Kan. 83 ; *Mo. Pac. Rly. Co. v. Hackett*, 54 id. 316 ; *City of Rosedale v. Golding*, 55 id. 167.)

The plaintiff in error also contends that, as the jury, in answer to interrogatories 1 and 2 propounded by the defendant in error, found that the city was guilty of negligence in not covering the ditch at the point where the accident occurred, it is fair to presume that the general verdict was based upon the knowledge and information obtained by the jury from the view of the premises, and the suggestion of counsel, as indicated by these special questions, instead of the evidence submitted in support of the negligence alleged in the petition. While we think the court erred in submitting these interrogatories to the jury, yet we do not think the error sufficiently prejudicial to cause a reversal of the judgment. In answer to interrogatory No. 8 propounded by the plaintiff in error, the jury say that it was the duty of the city, in the exercise of ordinary care and precaution in regard to its streets, to place guards or a railing along the ditch or excavation "or to cover it up" ; and by finding

No. 22 they say that the injury to the plaintiff was the result of the defendant's negligence in not guarding "or covering" the ditch. Of course, if the excavation had been covered, the city would not have been negligent in allowing it to remain without a guard or rail. Possibly the jury believed that the best way to protect pedestrians from falling into this excavation would be to cover it up, and we are not sure but that they would have been warranted in such belief. It is clear, however, from the findings that it was not covered up. And they virtually say, as it was not covered, it should have been guarded or railed; that the city was therefore negligent as charged, and that the injury complained of was the result. We think the special findings may be made to harmonize with the general verdict, and that they are supported by the evidence. And from a careful examination of the record and the authorities we are of the opinion that no prejudicial error was committed by the trial court, and that the judgment should be affirmed.

All the Judges concurring.